# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ALASHAE CRAWFORD,                                  Case No. 1:15-cv-694

       Plaintiff,                                           Dlott, J.
                                                   Bowman, M.J.

   v.

CHIPOTLE MEXICAN GRILL,

       Defendants.

## REPORT AND RECOMMENDATION

Plaintiff, through counsel, filed this action against her former employer, Chipotle Mexican Grill ("Chipotle"). Plaintiff's complaint alleges that she was wrongfully terminated from Chipotle on March 17, 2014. Plaintiff is an African American female. In Count I, she alleges that her termination was in retaliation for her protected conduct, namely, her complaints about racial discrimination toward another African American employee. (Doc. 1 at ¶`14). In Count II, Plaintiff alleges that the Defendant discriminated against her because of her race, and that similarly-situated employees of other races were not terminated. (Doc. 1 at ¶16).

On March 14, 2016, Senior U.S. District Judge Sandra Beckwith denied Chipotle's motion to dismiss Count II for failure to state a claim, finding that Plaintiff's allegations, "while somewhat spare," were sufficient under notice pleading standards to proceed to discovery. (Doc. 10).

Following the conclusion of discovery, Chipotle moved for summary judgment. Plaintiff has filed a response in opposition, to which Defendant has filed a reply. (Docs. 26, 29, 33). Pursuant to local practice, this matter has been referred to the undersigned magistrate judge for a report and recommendation on the Defendant's motion for

summary judgment. For the reasons set forth herein, Defendant's motion should be **GRANTED**.

## I. Summary Judgment Standard of Review

In a motion for summary judgment, a court "must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c))(internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

As the moving party, Chipotle has the burden of showing an absence of evidence to support the Plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once a moving party has met its burden of production, the non-moving party cannot rest on her pleadings, but must present significant probative evidence in support of her complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-49. The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252.

In reviewing the evidence in the context of a motion for summary judgment, courts generally cannot consider inadmissible hearsay. *See, e.g., Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007); *North American Specialty Ins. Co. v. Myers*,

111 F.3d 1273, 1283 (6th Cir. 1997).  However, the Federal Rules of Evidence contain many exceptions to the hearsay rule.  For example, deposition testimony by a party's officer, director, managing agent or designee, to the extent that it is "binding" on the organization itself, is not considered hearsay.  *Kelly Serv., Inc. v. Creative Harbor, LLC*, 846 F.3d 857, 867 (6th Cir. 2017).   In addition, under Rule 56(c), a party may cite to deposition testimony, discovery responses, affidavits, or other documents or materials to establish the absence or presence of a genuine dispute of material fact, or to show that the adverse party cannot produce admissible evidence, notwithstanding any hearsay issues, so long as the same evidence could be presented in an admissible form at trial.[1]  If a party fails to properly support an assertion of fact or fails to properly address an opposing party's assertion of fact as required by Rule 56(c), the court may allow an additional opportunity to properly support or address the fact, or the court may consider the fact undisputed for purposes of the motion.  *See* Rule 56(e).

## II.    Facts

Pursuant to Rule 56 and the undersigned's Standing Order on Civil Procedures, Defendant filed Proposed Undisputed Facts (Doc. 25-13), to which Plaintiff filed a response.  (Doc. 31).  Many of the facts have been deemed undisputed by the parties.  Where conflict exists and Plaintiff has cited any *admissible* evidence, the undersigned has construed all disputed facts in favor of the Plaintiff, as the non-moving party.[2]

Defendant Chipotle is a chain of "fast casual" restaurants that specializes in Mexican fare and operates several restaurants located in or near Cincinnati, Ohio.

---

[1]For example, although affidavits would otherwise constitute hearsay, Rule 56(c)(4) requires affidavits or declarations to be based upon personal knowledge and to set forth only those facts that would be admissible in evidence.

[2]As discussed more fully below, evidence that could not be presented in an admissible form has not been considered.

Plaintiff was an "at-will" employee of Chipotle, meaning that Chipotle or Plaintiff could terminate the employment relationship without prior notice at any time, for any reason or for no reason at all, so long as the reason was not in violation of federal law.

Every Chipotle restaurant is operated by a set of Crew Members. The Crew Members are assisted and managed by four levels of management (listed in ascending order of responsibility): Kitchen Manager, Service Manager, Apprentice Manager, and General Manager. The Kitchen Manager and Service Manager positions are hourly wage positions, while the General Manager ("GM") and Apprentice Manager positions are salaried.

The GM makes all hiring and firing decisions at each restaurant. General Managers of individual restaurants strive to be promoted to the rank of Restaurateur, who set the standard for other managers. (Tr. 26-1 at ¶12). In Chipotle's hierarchical scheme, General Managers report to managers for field operations of multiple restaurants within a geographic region, including "Team Leaders" and/or "Area Managers." Melvin Henriquez ("Henriquez"), a Hispanic male, was a Team Leader for both Ohio restaurants at which Plaintiff worked during the time period at issue.

In February 2012, Plaintiff was hired by Chipotle as a cashier at a restaurant in Sharonville, Ohio. In the summer of 2012, Jeysie Torres ("Torres"), also a Hispanic male, became the GM at Sharonville.

In her first written performance review in April 2012 as a crew member at the Sharonville location, Plaintiff was rated "Needs Improvement" on her people skills. She was counseled "to make sure there is better communication on the line with her team mates," and that she "is inconsistent when it comes to her attitude with the customers." (Doc. 26-7 at 13). In November 2012, Torres rated her as "meets expectations" under

the category of "people," but was again counseled that she needed "better communication on the line with her team mates," and was "inconsistent when it comes to her attitude with her team." (Doc. 26-7 at 9). On both performance reviews, she was advised to "make sure that she elevates her team and everybody that comes in contact with [C]hipotle." (*Id., see also* Doc. 26-7 at 13; Doc. 25-3 at 112). Plaintiff testified that her performance improved, but admitted she would "sometimes have little relapses." (Doc. 26-3 at 106).

Torres appeared to agree that Plaintiff had demonstrated improvement. By the spring of 2013, Torres had identified Plaintiff as a future Kitchen Manager in Sharonville and encouraged her to pursue that position. Plaintiff testified that he "was very adamant about me becoming Kitchen Manager…Mr. Torres was like…you have the capability and the potential to be a kitchen manager. I think you need to stop doubting yourself and give it a try." (Doc. 26-3, Plaintiff's deposition at 54:20-23; 55 10-12). On April 8, 2013, Torres recommended Plaintiff's promotion to Kitchen Manager; her promotion was approved by Henriquez.

After he promoted Plaintiff, Torres was transferred to the Evendale location in order to help address multiple performance and quality issues at that location. Osbaldo a/k/a "Ozzie" Amaya ("Amaya"), a Hispanic male, was also transferred to Evendale and became the Apprentice Manager under Torres. After Torres's transfer, an African American female became the new Sharonville GM.

Defendant maintains the new Sharonville GM had significant concerns about Plaintiff's performance and considered firing her. Plaintiff disputes the Defendant's evidence as hearsay because there is no corroborating testimony or affidavit from that GM herself. However, Henriquez competently testified that he advised the new GM not

to fire Plaintiff but instead to transfer her to Evendale. (Doc. 26-8 at 62). Henriquez also testified to Plaintiff's negative reputation among her managers. (Doc. 26-8 at 26-27, 43-44; Doc. 26-9 at 24, 35); *see generally* Fed. R. Evid. 802(21) (exception to hearsay for reputation evidence).

On June 30, 2013, Plaintiff was transferred to Evendale to work with Torres. Torres was an advocate for Plaintiff when she was performing well, and Plaintiff and Torres considered each other "family."

When she first arrived at Evendale, Plaintiff thought that other employees believed that she and Torres were looking down on them. (Doc. 26-3 at 108). She testified that when she was given a review in June of 2013, her communication skills and morale were lacking and her "attitude did suffer a little bit" as a result of "miscommunication with [her] coworkers." (Doc. 31 at 7, citing Doc. 26-3 at 102-103).

Six months later, in a performance review dated December 16, 2013, Torres rated Plaintiff as "Above Expectations," (*see* Doc. 26-7 at 5), and recommended another promotion, from Kitchen Manager to Service Manager. The decision was not popular among Evendale Crew Members, who wanted Torres to promote from within the Evendale location. Nevertheless, Henriquez again validated the promotion and testified he noticed improvement in Plaintiff's performance when she was in training for the Service Manager position. However, after her promotion, early in 2014, Henriquez counseled Plaintiff "about her attitude towards other employees, and also about being inconsistent with fulfilling her responsibility as a [S]ervice [M]anager." (Doc. 26-8 at 26-27). Plaintiff admitted that she had some difficulty with other crew members when she was transitioning from Kitchen Manager to Service Manager, and "definitely had

relapses on the line" with her communication with other employees at that time.  (Doc. 26-3 at 106, *see also id.* at 102).

On February 16, 2014, Chipotle's Respectful Workplace Hotline received a complaint from Evendale Crew Member Phillip Shelton, an African American male, that he had not been paid for all hours worked.  There is nothing on the written complaint form to suggest that Shelton attributed the time inaccuracies to any racial animus.  The form itself constitutes an exception to hearsay under Federal Rule of Evidence 803(6).  By contrast, in testimony that constitutes hearsay with no obvious exception,[3] Plaintiff testified that she overheard Shelton in his call to the Hotline explain that he did not have a problem with his African American manager (Plaintiff) but had a problem with his two Hispanic managers (Torres and Amaya).  According to Plaintiff, Shelton clearly stated that his two Hispanic managers had "been showing favoritism towards other Hispanic workers that work the same position as me…." (Doc. 26-3 at 180).  Henriquez received a verbal complaint from Shelton on the same day about Shelton's time being altered, but neither Henriquez nor any other evidence corroborates Plaintiff's testimony that Shelton complained of racially motivated favoritism or discrimination.[4]

Plaintiff testified that Shelton complained to her about the improper editing of time around the same time, and that she then brought up the issue with GM Torres and

---

[3]Shelton apparently no longer works for Chipotle, and neither Plaintiff nor Defendant has offered any direct testimony or a declaration from him about the nature of his complaints about his time being shorted. Other key witnesses, including Torres and Amaya, also left or were terminated from Chipotle between June and August 2014. (Doc. 26-8 at 6-7). Neither party has submitted any testimony from those two prior managers for consideration on summary judgment.

[4]Although Plaintiff's deposition testimony is not entirely clear, she testified that Shelton reported to her that he was involved in a heated argument with Amaya the day before he complained to the Respectful Workplace Hotline.  Plaintiff's testimony suggested that Shelton's complaint to Plaintiff and to the Hotline concerned Amaya's reduction of his scheduled shifts from five days per week to three days per week following that argument, which Plaintiff believed to be action that Amaya took to avoid working with Shelton. (Doc. 26-3 at 179-185).  She complained that changes in Shelton's schedule left Plaintiff understaffed on her own shifts, but made no mention of race.  (*Id.*, at 185).

his Apprentice, Amaya. In additional hearsay, Plaintiff testified that there were other African American employees who brought their complaints of improperly edited time to her around the same time period, but Plaintiff has not corroborated that testimony with time records, Respectful Workplace Complaints, or the testimony or affidavits of the referenced employees or other witnesses. She also admitted she did not discuss the alleged additional reports with anyone, and made no independent Respectful Workplace Complaint or other report to Chipotle management or anyone else.

Based upon Shelton's complaint to him, Henriquez launched an investigation that included conversations with the entire management team, including Torres, Amaya and Plaintiff. Henriquez also spoke with other Crew Members at Evendale to ensure there were no inadvertent discrepancies in their time record, and discovered none. Henriquez concluded that Shelton often forgot to clock in or clock out at times, and that managers (including Plaintiff Crawford) made mistakes in adjusting his time records. Henriquez gave a verbal warning to all three managers (Torres, Amaya, and Plaintiff) that another mistake in editing time records would result in the managerial employee's termination.

After the investigation of Shelton's complaint, the matter was closed. The Respectful Workplace Form reflects that Shelton agreed with his reimbursement of missing hours after reporting the issue to Torres. (Doc. 26-11). However, in hearsay testimony that contradicts that business record, Plaintiff testified that she did not believe that record was accurate, because Shelton later showed her his paycheck stub and the missing time was not included on it. (Doc. 26-3 at 177-178, 189). In somewhat inconsistent testimony, Plaintiff also testified that she was not aware if Shelton was paid the back pay he was owed. (Doc. 26-3 at 189). It is undisputed that neither Shelton

nor anyone else made any further complaint to Chipotle about missing time other than Shelton's fully resolved Respectful Workplace complaint.

In early March of 2014, Henriquez assigned Mr. Samuel Revis to oversee the Evendale location to help Torres address ongoing issues. Revis testified that he witnessed the restaurant in disarray, the employees did not follow food safety protocols or deliver acceptable customer service, and overall cleanliness of the restaurant was lacking. Revis also determined that Torres was not accurately evaluating the Evendale employees, because Torres was not being sufficiently objective about his employees, which was negatively impacting operations. (Doc. 26-9 at 34; Doc. 26-8 at 38-39, 41). Torres was counseled to improve in critiquing his employees, to remove people that were wrong for the job and to hire new people to replace them as soon as possible. (Doc. 26-9 at 34-35; Doc. 26-8 at 39, 45).

Torres terminated Plaintiff on March 17, 2014, after telling her that she was being terminated because her crew did not like working with her. (Doc. 26-3 at 207). Torres was very emotional and cried when he terminated her, because the two were very close. (Doc. 26-3 at 209-210). Although Plaintiff was terminated by Torres, Revis supported that decision based upon his understanding of Plaintiff's reputation. (Doc.26-9 at 24, 35; Doc. 26-8 at 45).

The record is not clear as to whether Plaintiff was replaced as Service Manager at the Evendale location. Henriquez initially testified that she was not replaced at all (Doc. 26-8 at 45-46), but later submitted an affidavit that agrees with the testimony of Revis. Revis testified that Plaintiff was replaced within weeks of her termination by another African American female, who was promoted from Kitchen Manager to Service Manager. (Doc. 26-1 at ¶25); Doc. 26-9 at 37).

## II. Analysis of Defendant's Motion for Summary Judgment

### A. Retaliation Claim

Title VII prohibits an employer from discriminating against an employee because the employee "opposed…an unlawful employment practice under Title VII, 42 U.S.C. § 2000e-3(a)."[5] Ohio law similarly prohibits retaliatory employment practices. O.R.C. § 4112.02(1). In support of her retaliation claim, Plaintiff's complaint alleges, in relevant part:

> 7. In about February of 2013, Amaya altered the time records of Phillip Shelton, an African American crew member at the restaurant. As a result, Shelton was not paid money he earned. Shelton complained and Torres was ordered to pay Shelton the money that was due. Torres either failed or refused to pay Shelton the amount that was due.

> 8. A short time before March 17, 2014, Plaintiff complained to Torres that he was discriminating against Phillip Shelton and that Torres needed to stop harassing Shelton.

> 9. Torres told Plaintiff that the only reason she was defending Shelton was because Plaintiff was black.

> \* \* \* \* \*

> 14. Plaintiff engaged in protected conduct by complaining about racial discrimination toward an African American employee. Defendant retaliated against Plaintiff and terminated her shortly after she engaged in protected conduct. The stated reason for Plaintiff's termination is pretextual…

(Doc. 1).

To establish a prima facie case of unlawful retaliation, a plaintiff must prove:

> (1) he engaged in activity protected under Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and

---

[5]Title VII's anti-retaliation provision also makes it unlawful for an employer to discriminate against an employee who participates "in any manner in an investigation, proceeding, or hearing under" Title VII. *See generally Crawford v. Metro Gov't Nashville & Davidson Cnty, Tenn.*, 555 U.S. 271, 274 (2009) (describing "opposition" and "participation" clauses of Title VII's anti-retaliation provision).

(4) a causal connection existed between the protected activity and the materially adverse action.

*Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (internal quotation marks and additional citations omitted). In addition, the Supreme Court has explained that "retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Defendant argues that Plaintiff cannot establish several elements of her claim: that she engaged in protected activity, that Torres was aware of any protected activity, or that a causal connection existed between Plaintiff's activity and her termination.

Plaintiff's claim that she engaged in "protected activity" rests exclusively on her testimony that she complained about the fact that Shelton's hours had been improperly adjusted to Torres and/or Amaya. There is no dispute that Plaintiff made no formal complaint of discrimination outside of her conversations with Torres and/or Amaya. Plaintiff did not participate in any investigation of Shelton's complaint by Chipotle, did not testify as a witness for him, and was not interviewed by anyone at Chipotle in response to Shelton's complaint. However, she claims that her verbal complaints to Torres and/or Amaya amounted to protected "opposition" to a discriminatory employment practice.

A plaintiff need not have made any type of formal complaint to have engaged in "protected activity," so long as she has communicated a demand that a supervisor cease activity made unlawful by Title VII. *See Yazdian v. ConMed Endoscopic*

*Technologies, Inc.*, 793 F.3d 634, 645 (6th Cir. 2015). On the other hand, "Title VII does not protect an employee…if his opposition is merely a 'vague charge of discrimination.'" *Id.*, quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989); *see also Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591-392 (6th Cir. 2007) (holding that plaintiff's actions did not constitute a legally sufficient complaint where "the record [did] not contain any evidence that [the plaintiff] specifically alleged discriminatory employment practices in his discussion."). Ohio law similarly requires "an overt stand against suspected illegal discriminatory action," while "[v]ague charges of discrimination" have been deemed to be insufficient. *Locket v. Marsh USA, Inc.*, 354 Fed. Appx. 984, 997 (6th Cir. 2009).

Here, summary judgment should be granted to the Defendant because Plaintiff's deposition testimony confirms that her informal complaints did not constitute any type of overt stand against the type of discriminatory practice prohibited by Title VII, but were no more than vague complaints that would not have put a reasonable employer on notice, and did not in fact put Torres or Amaya on notice, that Plaintiff was complaining about racial discrimination. During her deposition, Plaintiff described the details of her conversations with Torres and Amaya. Those details were markedly devoid of any reference to race-based discrimination against Shelton, or any suggestion that Plaintiff was complaining of discrimination based on race against other employees or herself.

For example, Plaintiff testified that she first confronted Torres and Amaya specifically about Shelton's time records in January 2014, just after discovering the discrepancies:

> A: I went to [Torres and Amaya] about it and was like, hey, you know, [Shelton] asked me to check his time for him, and what's on his slip does not match, you know, what we have in the computer, and he's saying you

guys went back and adjusted his time. [Torres and Amaya] were like oh, you know, [Shelton] forgot to clock out that day, or he asked me to clock him out. And, you know, I explained to him, well, he has the slips for them, so that's really not looking good; but if that's what you say, I'm going to take your word for it.

(Doc. 26-3 at 174). At the time, Plaintiff accepted her managers' stated non-discriminatory business reason for the allege errors in Shelton's records.

Q: Okay. So you took their word for it?

A: Yes.

(*Id.*) This initial conversation, which allegedly occurred weeks prior to Shelton himself calling the Respectful Workplace hotline or making any complaint to Henriquez on February 16, 2014, did not constitute protected activity because neither the circumstances of the conversation nor the language used by Plaintiff would give rise to any inference that Plaintiff was complaining about a racially discriminatory employment practice.

Plaintiff was asked what happened next. She testified that she continued to notice time discrepancies with Torres and with other employees, which led her to investigate further and to have a second conversation on an unknown date with Torres and Amaya.

A: It got to the point that, you know, they were saying, oh, you now, I was clocking them out, but I was – they admitted to making the time earlier than what they clocked out because we are - our labor metric was off. And I explained to them, like, hey, this is in our handbook; don't do it again, because, you know, this can result in you being terminated.

Q: Okay. And what did they say?

A: And [Torres] was like – [Torres and Amaya] basically was like, we know, you now, it won't – it won't happen again; we just have to get through this; we're really trying to get to Restaurateur, just – we just needed to balance this out; Melvin [Henriquez] is really on our case about

> getting the Restaurateur. I'm like, okay, you know, just don't let it happen
> again.

(Doc. 26-3 at 175-176). Plaintiff testified that after this second conversation the time-shaving issue did not re-occur. She checked the time records of other employees and "their time would be correct," and "[a]s far as Mr. Shelton, he had stopped asking me to check his time for him." (*Id.* at 176). She further testified that the issues with improper time shaving were resolved after Henriquez had a similar conversation with all three managers, including Plaintiff, warning that they would face termination if further discrepancies were found. (Doc. 126-3 at 186-188).

Plaintiff never expressed any other complaints to anyone in Chipotle or outside of Chipotle. When questioned as to why she did not voice any further complaint, she again focused on explanations that had nothing to do with race-based discrimination, explaining:

> I trusted that my managers would correct their behavior and they were
> blindsided by the pressure to become Restaurateur, that it had altered
> their judgment. …And then, when I asked them about it and they admitted
> to it, I'm like, okay, you know, I get it, we're under pressure for
> Restaurateur, you do realize you can lose – we all can lose our job for
> this; don't let it happen again, unfortunately, I'm not going to have a choice
> but to report it because it's illegal; you did it the first time, it was illegal, but
> we can't have it anymore. Oh, it was only 15 minutes. But those 15
> minutes add up and they notice it.

(Doc. 26-3 at 176-177).

Although Plaintiff testified that she told her managers that the practice was "illegal," it is clear from the context of her deposition testimony that she believed the practice to be illegal under company policy or fair labor and/or wage reporting laws, because an employer must pay its employees for all time worked. Plaintiff did not testify at any point in her deposition that she told Torres or Amaya that she believed that

they were cutting Shelton's time or any other employee's time based upon race, or that she believed that they were engaged in any other practice prohibited by Title VII. The only reasonable interpretation of Plaintiff's testimony is that she believed (and expressed that belief to Amaya and Torres) that they had engaged in "illegal" time-shaving not because of any discriminatory race-based animus, but based upon corporate pressures to reduce their labor costs in order to achieve "Restaurateur" status. Thus, her verbal complaints to her supervisors do not constitute protected activity. "Complaints concerning unfair treatment in general which do not specifically address discrimination are insufficient to constitute protected activity." *Weaver v. Ohio State Univ.*, 71 F. Supp.2d 789, 793-794 (S.D. Ohio 1998). No reasonable fact-finder would infer that Plaintiff was complaining about any racially discriminatory practice or practice prohibited by Title VII, as opposed to some other form of illegality or violation of Chipotle policy. *See Davis v. City of Memphis Fire Dept.*, 940 F. Supp.2d 786, 797 (W.D. Tenn. 2013) (no protected activity where complaints about illegal locker search and other practices "were not in opposition to employment practices made illegal *by Title VII*") (emphasis original).

In her opposition to summary judgment, Plaintiff argues that her complaints were in fact sufficient to put Torres on notice that she was alleging racial discrimination by Torres against Shelton. For the first time on summary judgment, she attaches an affidavit that contains language that mirrors the precise language of her complaint, and attests that she told Torres specifically "that he was **discriminating** against Mr. Shelton and that he needed to stop harassing Mr. Shelton." (Doc. 29-1 at ¶3, emphasis added; *compare* Doc. 1 at ¶8). Crawford also asserts for the first time in her affidavit that "Mr. Torres was purposefully interfering with Mr. Shelton getting his back pay." (*Id.*).

15

Plaintiff cannot defeat summary judgment on the basis of new affidavit testimony that she told Torres he was "discriminating against" and "harassing" Shelton, because those statements are inconsistent with her prior deposition testimony.  At her deposition, Plaintiff clearly testified that she complained about Torres's "lapse of judgment," in reaction to the corporate pressure being exerted upon him to improve the restaurant's performance.  She never testified to any complaints of <u>racially motivated</u> "discrimination" or harassment.  (Doc. 26-3 at 185, 188).  To the contrary, the conversations and Plaintiff's deposition testimony reflect no more than complaints that Torres and/or Amaya were engaging in time-shaving in response to pressure to raise profits through the improper reduction of labor costs.  There is no suggestion in any of Plaintiff's deposition testimony that she expressed any belief that race played any role in that practice.[6]  The new testimony presented in her affidavit is insufficient to overcome her prior deposition testimony.  *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

Even if the affidavit were to be considered by this Court, the undersigned finds it insufficient to affirmatively show that Plaintiff engaged in protected activity by complaining about discrimination based on race.  Use of a general word like "discrimination" in a single conversation, without reference to race, age, gender or other protected category, and without *any other contextual evidence* that would give rise to an inference that the complaining party is taking a stand against the type of discrimination prohibited by Title VII, is simply too vague to constitute "protected activity."  *See Scheske v. Univ. of Mich. Health Sys.*, 59 F. Supp.3d 820, 828 (E.D. Mich. 2014)

---

[6]After a lengthy Q&A and discussion about her complaints to Torres and Amaya, defense counsel specifically asked Plaintiff: "[I]s there anything else about that issue [time-shaving] that you want to talk about?" to which Plaintiff responded "No."  (Doc. 26-3 at 189).

(plaintiff failed to present sufficient evidence for a reasonable jury to infer that she was complaining of gender discrimination; Plaintiff's testimony that she "described" gender discrimination was not sufficient in light of record as a whole).  During her deposition, Plaintiff repeatedly testified to her complaints that Torres and Amaya were engaging in time-shaving in response to corporate pressure to reduce the store's labor metric and increase profits, without any reference to any type of racial animus.  She also testified to her belief that Amaya had reduced Shelton's hours based upon an interpersonal conflict the two had engaged in the day before, and that Shelton's complaint to the Respectful Workplace Hotline arose from that event.  Even if Plaintiff did tell Torres to stop "discriminating" against Shelton, her own testimony about the context of her conversation confirms that her vague reference does not rise to the level of protected activity, but instead suggests no more than a complaint that the managers were unfairly singling him out.  *Accord Samuels v. Correctional Medical Serv., Inc.*, 591 Fed. Appx. 475, 485 (6th Cir. 2015) ("Not once does [plaintiff] suggest…that she was being harassed, discriminated against, or retaliated against based on any protected characteristic…."), *McNamara v. General Motors, LLC*, 189 F. Supp. 3d 685, 700 (N.D. Ohio 2016) (Plaintiff's anti-retaliation claim failed where he offered no evidence that he notified management that his complaints were related to his disability).

In her response in opposition, Plaintiff additionally argues that Torres's alleged verbal response to Plaintiff is sufficient to create an issue of fact.  Though Plaintiff provided no deposition testimony on this issue, she asserted in her responses to written discovery that she had "numerous conversations" with Torres about Shelton's inaccurate time records, and that "[e]ach time, the conversation was always shut down with the statement that I was just on his side because of we were the same race."  (Doc.

17

26-12 at 7).  In the affidavit submitted in opposition to summary judgment, Plaintiff similarly avers (in language that mirrors her complaint), that Torres told her that she was only standing up for Shelton because she and Shelton were both black.

This evidence does not suffice to establish Plaintiff's prima facie case considering the record as a whole.  The alleged comment amounts to an accusation by Torres that Plaintiff herself was engaging in race-based discriminatory conduct by excusing the poor performance of an employee (Shelton) for racial reasons, rather than objectively viewing Shelton's performance and routine failures to clock in or out.  Given the record as a whole, it is too far a stretch for Plaintiff to suggest that Torres's alleged statement acknowledges that he understood Plaintiff to be accusing *him* of racial discrimination.  *Accord Marshall v. Belmont Cnty. Bd. of Com'rs*, 1110 F. Supp.3d 780, 802 (S.D. Ohio 2015) (holding Plaintiff's complaints did not amount to protected activity required to support retaliation claim, where Plaintiff's affidavit averred in only a conclusory fashion that she complained about sexual harassment and gender discrimination, and deposition testimony suggested only generic complaints that she was being treated differently).  At best, the record reflects that Plaintiff made several complaints about the unfair treatment of Shelton by Torres, which cannot form the basis of a retaliation claim.  *See Baker v. Medtronic, Inc.*, 2009 WL 948800 at *8 (S.D. Ohio April 2, 2009).

Plaintiff's own testimony suggests that Torres and Amaya believed she was referring to the violation of Chipotle's timekeeping practices.  (Doc. 26-3 at 176-177). *See Choate v. Advance Stores Co., Inc.*, 169 F. Supp.3d 724, 734 (M.D. Tenn. 2015) (no evidence that Defendant interpreted vague complaints to be alleging discrimination against protected class); *see also Trujillo v. Henniges Automotive Sealing Sys. N. Am.*,

Inc., 560 Fed. Appx. 460, 469 (6th Cir. 2014)("brief, non-specific complaint expressing generalized discomfort with comments" not sufficient to lead a reasonable juror to conclude that supervisor knew plaintiff was engaging in protected opposition activity). Nor was Henriquez aware of any allegations of racial discrimination. (Doc. 26-8 at 62). Having determined that Plaintiff has failed to establish that she engaged in any "protected activity" of which Torres was aware, the undersigned finds no need to reach the issue of whether Plaintiff has established the fourth element of a prima facie retaliation claim: a causal connection between her protected activity and her termination. *But see generally McIlwain v. Ohio Dept. of Mental Health, Northcoast Behavioral Healthcare System*, 409 F. Supp.2d 908, 918 (N.D. Ohio 2006) ("Absent …awareness on the part of her employer [that plaintiff was engaging in protected activity], plaintiff cannot establish a causal connection between her comment… and the numerous write-ups which she received.").

### B. Race Discrimination Claim

"[T]he same framework used to evaluate a Title VII discrimination claim applies to discrimination claims under § 1981 and O.R.C. § 4112.02." *Smith v. Board of Trustees Lakeland Cmty. Coll.*, 746 F. Supp. 2d 877, 893 (N.D. Ohio 2010). Under the familiar framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), Plaintiff may establish a prima facie case of discrimination by showing that: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position lost; and 4) she was replaced by an individual outside the protected class, or alternatively, was treated less favorably than a similarly-situated individual outside the protected class. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2004).

On the record presented, Defendant does not dispute that Plaintiff can establish the first three elements of her claim. However, Plaintiff has failed to offer any evidence to establish that she was replaced with an individual outside of her protected class, or that she was treated less favorably than similarly situated employees outside of her protected class.

Plaintiff was terminated on March 17, 2014 by Torres. Torres alone, as the GM, was responsible for hiring and firing decisions. (Doc. 31 at ¶¶5, 20, 63-65; *see also* Doc. 29 at 15, acknowledging "Torres was the sole decision maker in Plaintiff's termination."). The mere fact that Torres was of a different race than Plaintiff is not sufficient to show racial bias. *Geary v. UC Health*, Case No. 1:13-cv-300, 2015 WL 3822891 at *8 (S.D. Ohio Jan. 23, 2015), adopted at 2015 WL 3823749 (S.D. Ohio Jun 19, 2015)..

Torres terminated Plaintiff soon after Revis advised him to make personnel changes "because the team [Mr. Torres] had at the time was not able to be successful either because they were training incorrectly or…he hired the wrong people." (Doc. 31 at ¶62, citing Doc. 26-9 at 34; *see also* Doc. 26-8 at 38). Torres notified Plaintiff that he was terminating her because her crew members did not like working with her. (Doc. 26-3 at 207). Ironically, Plaintiff had twice been promoted by Torres, who Plaintiff acknowledged to be a strong advocate on her behalf, and with whom Plaintiff felt a close emotional bond and considered "family." Although there is no mandatory inference that must be applied, the "same-actor inference" provides additional evidence - especially where Plaintiff has otherwise failed to raise a genuine issue of material fact - that there was no discrimination involved in the later termination. S*ee Wofford v.*

*Middletown Tube Works, Inc.*, 67 Fed. Appx. 312, 318 (6th Cir. 2003) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 572 (6th Cir. 2003)(en banc)).

Apart from the same actor inference, it is undisputed that Plaintiff was not replaced after her termination by someone outside of her protected class. Although the Plaintiff is quick to point to a discrepancy between the deposition testimony of Henriquez and that of Revis on the issue of whether she was replaced at all,[7] the dispute is not *material*. Both men testified that Plaintiff was not replaced immediately upon her termination, and that if/when she was ever replaced, her replacement was another African American female. There is no evidence at all that Plaintiff was replaced by someone who was of a different race.

Plaintiff also has failed to put forth sufficient evidence to create a genuine issue on whether similarly situated employees were treated differently. "To be deemed similarly situated, the individuals with whom the plaintiff seeks to compare his treatment must have been the same in all relevant aspects*." Kumar v. Aldrich Chem. Co.*, 911 F. Supp.2d 571, 585 (S.D. Ohio 2012). In her complaint, Plaintiff alleges only that "[s]imilarly-situated non-African American employees who engaged in improper conduct, including falsifying time records and theft, were not <u>terminated</u>." (Doc. 1 at ¶ 16, emphasis added). However, in written discovery responses, Plaintiff identified seven Hispanic individuals as similarly-situated employees who she believes received other more favorable treatment unrelated to discipline/termination, because the referenced Hispanic employees were "allowed overtime hours when no one else was able to get

---

[7]Henriquez initially testified that Plaintiff was not replaced by anyone, but later filed an affidavit consistent with the testimony of Revis, who identified another African-American female who was promoted from Kitchen Manager to Service Manager within weeks after Plaintiff's termination.

overtime hours, and allowed to pick what shift and position they wanted to work." (Doc. 26-12 at 5 and 7).

As Defendant points out, six of the individuals identified by Plaintiff as receiving more favorable treatment were crew members, not managerial employees, and therefore are not similarly situated. "It is the plaintiff's burden to establish that a similarly situated person outside the protected class was treated more favorably than [plaintiff]." *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 728-729 (6th Cir. 2004) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Plaintiff's reliance on *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998) is misplaced to the extent that Plaintiff argues that the distinction does not matter. The Sixth Circuit explained in *Ercegovich* that courts

> should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee. The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated;" rather, as this court has held in *Pierce,* the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in "all of the *relevant* aspects." *Pierce,* 40 F.3d at 802 (emphasis added).

*Id.*, 154 F.3d at 352. In staffing a restaurant, the distinction scheduling a manager's presence and staffing crew members on a given shift is not only relevant, but arguably a critical distinction. Thus, variations in the scheduling of crew members identified by Plaintiff versus the scheduling of managerial employees like Plaintiff does not support her prima facie claim. *See Johnson v. Kroger Co.*, 319 F.3d 858, 869 (6th Cir. 2003).

Plaintiff also identified Amaya and Torres as similarly situated managerial employees who were treated differently, because they were not subjected to discipline or terminated despite allegedly similar offenses. Plaintiff first asserts that "neither

Amaya nor Torres were disciplined for altering Phillip Shelton's schedule and refusing to pay him after he complained to Respectful Workplace." (Doc. 26-12 at 5-6).

Contrary to her initial discovery responses, Plaintiff later admitted that all three managers – Amaya, Torres, and Plaintiff herself – were verbally warned by Henriquez that another mistake in editing time entries would result in termination. (Doc. 26-8 at 33; Doc. 31 at ¶56).[8] Therefore, Plaintiff was not subjected to more severe discipline, nor were Amaya or Torres subjected to less discipline, for the errors in Shelton's time records.[9]

Last, in what the undersigned assumes to be in support of the allegation in her complaint that similarly situated employees were not terminated for "theft," Plaintiff asserts that Amaya "was not disciplined even though there were shortages on deposits that he made…." (Doc. 26-12). Defendant first argues that Amaya was not similarly situated because he was a salaried manager who was in an apprentice position for the entire restaurant, with greater responsibilities than Plaintiff had as an hourly managerial employee. However, the undersigned does not agree that Amaya cannot be considered a comparator in this instance, since both Torres and Henriquez outranked and supervised both Amaya and Plaintiff at the Evendale location to some degree.[10]

---

[8]Plaintiff has come forward with no admissible evidence that would contradict evidence that Shelton was actually paid for the missing time after his complaint was investigated. (Doc. 26-11, Doc. 26-8 at 32; Doc. 31 at ¶47).
[9]To the extent that Plaintiff relies upon the alleged argument between Amaya and Shelton that Plaintiff asserts led to Amaya reducing the number of Shelton's hourly shifts each week, Defendant argues that this Court should not consider that evidence because it is based solely on hearsay, and not corroborated by any competent evidence. The undersigned agrees. Alternatively, the undersigned agrees that Amaya's alleged one-time altercation with Shelton is not equivalent to Plaintiff's history of ongoing conflicts with co-workers and crew members.
[10]Team Leader Henriquez also gave the same verbal warning to all three Evendale managers about the discrepancies in the time records, and to that extent Plaintiff and Amaya also fell under the same "supervisor" for that conduct.

On the other hand, Plaintiff's accusation that Amaya was not disciplined despite shortages in his deposits, and/or may have committed "theft," is wholly conclusory and not supported by admissible evidence. *See Moore v. Ohio Edison Co., Inc.*, 2016 WL 7097631 at *4 (N.D. Ohio Dec. 6, 2016) (holding that conclusory allegations are insufficient to defeat a well-supported motion for summary judgment). In addition, independent of that serious evidentiary issue, Plaintiff still has failed to show that Amaya engaged in the same or similar misconduct and was not terminated. Rather, Plaintiff is claiming that Amaya engaged in entirely different misconduct and was not terminated – which *de facto* distinguishes him as a comparator. *See Highfill v. City of Memphis*, 425 Fed. Appx. 470, 474 (6th Cir. 2011) ("unrelated information about other types of infractions by fellow employees is not relevant for purposes of comparison"). And contrary to her accusation, Plaintiff testified that <u>both</u> Amaya and Plaintiff were questioned about shortages in their deposits. (Doc. 26-3 at 212-213). Neither was terminated for those alleged shortages and to that extent, they were treated equally. Plaintiff's subjective belief that her explanation for the shortage(s) was credible or "valid" while Amaya's explanation was not, (*see id.*), and therefore should have resulted in more severe discipline, is not sufficient to defeat summary judgment.

Finally, Plaintiff strongly implies that Torres may have fabricated documentation of a verbal warning about her conflicts with crew members in order to support her termination after-the-fact. Although the allegedly fabricated document has not been entered into the record before this Court, Plaintiff appears to have been questioned about it at her deposition. (Doc. 29 at 11, referring to Doc. 26-3 at 8-9, 199-200). The suggestion that Torres fabricated evidence that has not been submitted to this Court

amounts to nothing more than unsupported speculation, and is not further considered. *Dean-Lis v. McHugh*, 598 Fed. Appx. 412, 415 (6th Cir. 2015).

### C. Lack of Pretext

The undersigned has concluded that Defendants are entitled to summary judgment based upon Plaintiff's failure to prove her prima facie case on either her retaliation or discrimination claims. Alternatively, the undersigned concludes that Defendant is entitled to summary judgment because it has come forward with a legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff has not carried her burden to show that the stated reason was pretextual.

Of course, this additional inquiry is unnecessary to the extent that no prima facie case has been established. It is only when a plaintiff has established her prima facie case that the burden of production shifts to the employer to put forth a "legitimate, nondiscriminatory reason" for the adverse action taken. *Wright v. Murray Guard, Inc.*, 455 F.3d at 706 (citing *Burdine v. Texas Dept. of Community Affairs*, 450 U.S. 248, 253 (1981)). If the employer meets that burden, then "the presumption of discrimination created by the prima facie case falls away…and the plaintiff then needs to show that the defendant's 'legitimate nondiscriminatory reason' was a 'pretext for discrimination.'" *Id.*, at 706-707 (internal citations omitted).

On the day she was terminated, Torres told Plaintiff that she was being let go because her crew members did not want to work with her. Plaintiff was an at-will employee and the stated reason for her termination was facially legitimate and nondiscriminatory. *See Setzer v. Heartland Sec. Mortg.*, LLC, 2006 WL 1133253, at *5 (S.D. Ohio Apr. 27, 2006) (finding plaintiff's alienation of salespeople legitimate reason for termination). Despite two promotions by Torres within the time period that Plaintiff

worked for Chipotle, Plaintiff had received similar critiques about her interpersonal skills on prior written evaluations. Therefore, to the extent that any reviewing court would find (contrary to the undersigned) that Plaintiff has in fact established a prima facie case, the undersigned alternatively concludes that Defendants have rebutted the presumption of discrimination. *See Chen v. Dow Chemical Co.*, 580 F.3d 394, 401 (6th Cir. 2009)(no pretext where employer acted on evidence of performance problems and conflicts with coworkers); *see also generally Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000). So long as the employer "reasonably relied on the particularized facts then before it, [the Court does] not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

### 1. Plaintiff's Failure to Show No Basis in Fact

Defendant is entitled to summary judgment, because Plaintiff has failed to show that the reasons given for her termination were not the true reasons, but were instead were a pretext for discrimination. *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1395 (6th Cir. 1993). "The ultimate burden of proving the defendant's intent to discriminate remains with the plaintiff at all times." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006), (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). In fact, Torres himself was terminated within three months of Plaintiff for a similar reason, because he was "not earning the respect and the trust of his crew" in the manner that Chipotle expected. (Doc. 26-9 at 25).

Rather than showing that Defendant's reasons were pretextual, Plaintiff attempts to impermissibly shift the burden to the Defendant to prove the truth of Torres's stated reasons for her termination. Plaintiff argues, for example, that the "Defendant has not provided evidence supporting its claim that Plaintiff was terminated because her crew did not want to work with her," and has "not presented any evidence or testimony from Torres about his motive," or "from crew members supporting Torres'[s] claim." (Doc. 29 at 15). But the Defendant easily satisfied its burden of articulating a non-discriminatory reason for Plaintiff's termination through Plaintiff's *own* testimony. Once Defendant came forward with that evidence, it became Plaintiff's burden to rebut the proffered rationale, not the Defendant's burden to prove it.

Plaintiff testified at length that Torres was very emotional and clearly struggled with his decision to terminate her, as he had been her strong advocate in the past and the two were close. The Defendant was not required to produce evidence beyond Plaintiff's own testimony about Torres's stated reasons for terminating her, since there is no dispute he was the sole decision maker in this case. (Doc. 29 at 15). And, while the Defendant had no obligation to produce additional evidence, the record contains substantial evidence, in the form of Plaintiff's reputation among her managers, her written performance reviews, and Plaintiff's own testimony about her continuing interpersonal conflicts with her crew members (including Phillip Shelton), to support Torres's stated reasons for the termination.

Rather than providing evidence sufficient to rebut that rationale, Plaintiff attempts to overcome Torres's stated reason for her termination based on nothing more than her own subjective beliefs. Plaintiff's lack of any evidence of pretext is fatal to her claim. *See Mitchell v. Toledo Hosp.*, 964 F.2d at 584-85 (plaintiff's subjective belief insufficient

to maintain claim of race discrimination); *see also In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)(holding that a nonmoving party has an affirmative duty to direct the court's attention to specific portions of the record upon which the nonmovant seeks to rely to create a genuine issue of material fact).

Defendant Chipotle would be entitled to summary judgment even if the undersigned believed that Plaintiff's termination was too harsh a penalty. The Sixth Circuit uses a modified "business judgment" or "honest belief" rule, whereby a court will permit an employer to "establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Blizzard v. Marion Technical College*, 698 F.3d 275, 286 (6th Cir. 2012)(quoting *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010)(additional internal quotation marks and citation omitted)). Here, Plaintiff has failed to produce any evidence demonstrating that Defendant's reliance on Torres's stated reasons for termination were unreasonable. Plaintiff's disagreement with that decision "does not create sufficient evidence of pretext in the face of the substantial evidence that [the employer] had a reasonable basis to be dissatisfied." *Id.* (quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001)).

In short, Plaintiff's subjective perception that she should not have been fired does not overcome the Defendant's reasonable belief that Plaintiff lacked the qualities and abilities to be an effective manager, given the consistent nature of the interpersonal issues that Plaintiff had during her tenure with Chipotle, and the pressure on Torres to expeditiously improve the restaurant's performance with personnel changes. Even if Plaintiff believes that Defendants' decision to terminate her was unfair, or overly abrupt, that belief does not translate to proof of an impermissible racial motive. *Accord Burnett*

*v. Carrington Health Systems*, Case No. 1:11-cv-324, R&R filed 11/30/2012, adopted at 2013 WL 1150208 (S.D. Ohio, March 19, 2013)(granting defendant's motion for summary judgment and dismissing case).

### 2. Failure to Prove that Retaliation was the Real Reason

In addition to showing that the stated reason had no basis in fact, pretext can be shown by offering evidence that "the stated reason did not actually motivate the employer, or…the stated reason was insufficient to warrant the adverse employment action." *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014). Ultimately, "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Chen*, 580 F.3d at 400 n.4.

Plaintiff argues that even if jurors found that there was some evidence to support Torres's articulated reason for firing her, a jury could still find that Torres was using that excuse as a pretext for retaliating against her for her complaints about his treatment of Shelton. Plaintiff relies on *Imwalle v. Reliance Medical Products*, 515 F.3d 531 (6th Cir. 2008) to argue that the evidence is sufficient for a jury to find that retaliation was the real reason for her termination, rather than her performance.

I disagree. First, as discussed, there is ample evidence to support the stated reasons. This not a case where the "sheer weight of the circumstantial evidence" was sufficient to go to the jury on the issue of pretext. *Id.* at 851 (quoting *Manzer,* 29 F.3d at 1084). Rather, as discussed above, Plaintiff has failed to make out even a prima facie case of retaliation because her conversations with Torres did not amount to protected "opposition" activity. Even if the conversations somehow could be viewed in that context, there is no evidence that Torres understood her criticisms about Shelton's time records to be opposition to race-based discrimination as opposed to mere criticism that

he was violating company policy and/or wage laws that require full payment for time worked.

### 3. Failure to Prove that Conduct Insufficient to Support Discharge

For similar reasons, Plaintiff has failed to offer any evidence to suggest that her chronic interpersonal issues with crew members were insufficient to motivate her termination, at a time when Torres was facing intense corporate scrutiny to make personnel changes that would improve the restaurant's performance. Both Henriquez and Revis testified that Torres was terminated just three months later for failing to improve performance, and for failing to be an objective and effective manager, and to hire the right people. (Doc. 26-8 at 48-49; Doc. 26-9 at 25).

### III. Conclusion and Recommendation

For the stated reasons, the undersigned hereby **RECOMMENDS** that the Defendant's Motion for Summary Judgment (Doc. 26) be **GRANTED.** Plaintiff's complaint should be dismissed with prejudice, and this case be **CLOSED**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ALASHAE CRAWFORD,                                              Case No. 1:15-cv-694

        Plaintiff,                                              Dlott, J.
                                           Bowman, M.J.

    v.

CHIPOTLE MEXICAN GRILL,

        Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).